WISCONSIN PUBLIC SERVICE CORPORATION,
Petitioner-Respondent-Cross Appellant,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN,
Respondent-Cross Respondent.

CITIZEN'S UTILITY BOARD, INC., Petitioner-
Appellant-Cross Respondent,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN,
Respondent-Cross Respondent.

Court of Appeals

*No. 89-0532. Submitted on briefs March 22, 1990.—Decided
May 8, 1990.*

(Also reported in 457 N.W.2d 502.)

611

613

For petitioner-appellant-cross respondent, Citizen's Utility Board, Inc., there were briefs by *Allen A. Arntsen* and *Briony Jean Foy,* Madison.

For petitioner-respondent-cross appellant there were briefs by *Allen W. Williams, Jr.* and *Michael D. Flanagan* of *Foley & Lardner,* Milwaukee.

For respondent-cross respondent, Public Service Commission of Wisconsin, there were briefs by *John F. Ebbott,* Sheboygan.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Wisconsin Public Service Corporation (WPS) appeals the trial court's affirmance of a Public Service Commission (PSC) rate-setting decision that found WPS imprudent for failing to pay its taxes under protest when other utilities challenged the constitutionality of that tax. The Citizens' Utility Board, Inc. (CUB), also appeals, contending that PSC failed to impose an adequate sanction as a remedy for WPS's imprudence. Because we conclude that PSC applied the appropriate legal standard in finding imprudence and established a reasonable rate of return on equity, we affirm the commission's determination.

In 1981, the Wisconsin Legislature repealed a tax credit previously available to state utilities. Because there was a question as to the constitutionality of the credit repeal, WPS consulted outside tax counsel for advice on the viability of challenging the repeal. Outside counsel opined that the repeal was probably constitutional, but added that WPS had a 30% to 40% chance of prevailing on a constitutional challenge.

Based on this advice, WPS decided not to challenge the legislation. Even after other Wisconsin utilities instituted a constitutional challenge, WPS declined to participate. The challenge was not resolved for three years and WPS paid its taxes without the credit, as required by statute. In 1985, the tax credit repeal was held unconstitutional, and a new tax was enacted by the legislature.

█ During the pendency of the constitutional challenge, WPS paid its taxes without protest. A taxpayer can pay taxes under protest to preserve its right to reclaim the tax at a later date. *See Manitowoc Co. v. City of Sturgeon Bay,* 122 Wis. 2d 406, 362 N.W.2d 432 (Ct. App. 1984). Despite the fact that a successful challenge would result in a refund if WPS paid the tax under protest, WPS did not do so. When the credit repeal was held unconstitutional, those utilities that paid under protest received full refunds on taxes paid.

WPS sought approval for a rate increase from PSC in 1986 pursuant to ch. 196, Stats. In reviewing WPS's application, PSC concluded that WPS's failure to pay its taxes under protest was imprudent because of the lawsuit brought by other utilities. Furthermore, PSC concluded that WPS could have easily, without cost, filed under protest to protect its assets in the event the chal-

lenge was successful.[1] Prudence is a factor PSC considers in setting utility rates and can affect the allowed return on equity. *See* sec. 196.37, Stats. Because of WPS's imprudence, PSC ordered a rate of return on equity for a part of 1987 that was .1% less than otherwise would have been approved. This sanction cost WPS approximately $250,000 in lost revenue. The amount of taxes recoverable but forfeited due to WPS's failure to file under protest is well in excess of $250,000, though the exact amount is in dispute.[2]

Our scope of review on appeal is identical to that of the circuit court. *West Bend Ed. Ass'n v. WERC,* 121 Wis. 2d 1, 11 n.8, 357 N.W.2d 534, 539 n.8 (1984). We review the decision of the commission, not the court. *Liberty Trucking Co. v. DILHR,* 57 Wis. 2d 331, 342, 204 N.W.2d 457, 463–64 (1973).

There is no dispute that WPS paid its taxes without protest and knew of the constitutional challenge to the repeal of the tax credit. PSC's finding of imprudence thus involves the application of a legal standard, prudence, to a set of undisputed facts. This is a question of

---

[1]While initially the relevant time period included the taxes paid without protest from the date of the repeal, PSC concluded that WPS was only imprudent for failing to protest payment after the challenge to the statute's constitutionality was filed—the taxes paid in 1983 and 1984.

[2]CUB contends that WPS would have been entitled to a refund of approximately $2.8 million for tax years 1983 and 1984. PSC contends and WPS concedes that WPS would have been entitled to approximately $1.4 million. Because we agree that PSC need not effect a dollar-for-dollar remedy, the exact amount at issue is not relevant.

law. *Seep v. State Personnel Comm'n,* 140 Wis. 2d 32, 38–39, 409 N.W.2d 142, 144 (Ct. App. 1987).

We ordinarily review questions of law de novo. *Id.* Because the operation of a utility is within the expertise of PSC, however, we accord deference to their findings. *Beloit Educ. Ass'n v. WERC,* 73 Wis. 2d 43, 67, 242 N.W.2d 231, 242 (1976). Even if we did not accord deference, we will sustain an agency's conclusion of law if it is reasonable, even though an alternative view may be equally reasonable. *See Robert Hansen Trucking, Inc. v. LIRC,* 126 Wis. 2d 323, 332, 377 N.W.2d 151, 155 (1985).

WPS alleges that PSC erred by finding imprudence in WPS's decision not to pay its taxes under protest during the pendency of the constitutional challenge. WPS claims that it made a reasoned decision not to challenge or protest the new tax levy and that it should not be penalized for paying taxes as required by statute. PSC never concluded that WPS was imprudent in refusing to challenge the repeal. Rather, it concluded that WPS was imprudent not to protest payment when the constitutionality of the repeal was being challenged by others. Essentially, PSC concluded that WPS was required, under the exercise of normal prudence, to take the "free ride" given to it by other utilities' constitutional challenge to the repeal of the tax credit. Under PSC's ruling, WPS only needed to pay its taxes under protest.

Prudence is defined as:

> Carefulness, precaution, attentiveness, and good judgment, as applied to action or conduct . . .. This term, in the language of the law, is commonly associated with "care" and "diligence" and contrasted with "negligence."

617

Black's Law Dictionary 1104 (5th ed. 1979). In assessing imprudence, PSC must assess the utility's conduct without usurping the role of management. *See TWA v. Civil Aeronautics Bd.,* 385 F.2d 648, 655–56 (D.C. Cir. 1967).

PSC's determination in this instance does not usurp the role of management. PSC did not, in effect, require WPS to join the legal challenge to be prudent. PSC only required WPS to pay its taxes under protest as a reasonable precaution. Because prudence is a synonym of caution, PSC was correct in concluding that WPS failed to take reasonable steps to protect its assets. WPS gave up its right to a large tax refund by failing to protest its payment even though it could do so without cost and had been previously advised that there was a substantial chance that the credit repeal was unconstitutional. Under these facts, a finding of imprudence was warranted.

CUB also appeals, claiming that PSC abused its discretion by failing to impose a sanction equal to the value of the loss caused by WPS's imprudence. CUB complains that the remedy was inadequate and that the commission failed to consider imprudence in establishing the range of reasonableness. PSC reduced WPS's rate of return or equity from 13% to 12.9% for the remainder of 1987. CUB's primary complaint is that this was not a dollar-for-dollar remedy.

PSC has wide discretion in dealing with the issue of imprudence. Section 196.37(2), Stats., authorizes PSC to address any unreasonable practice through any just and reasonable order. In construing a statute, we first resort to the language itself. *Town of Seymour v. City of Eau Claire,* 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823 (Ct. App. 1983). Absent ambiguity, the words of the statute

must be given their ordinary meaning. *Id.* at 319, 332 N.W.2d at 823–24. Imprudence is, by definition, an unreasonable practice because the waste of assets is the antithesis of the care associated with prudence. Because the waste of assets and the permissible rate of return are related, the PSC may address the waste of assets in a rate-setting order. In this case, the commission penalized WPS for imprudence by authorizing a lower rate of return on equity than otherwise would have been approved. PSC has the authority to do so; it need consider imprudence only in setting the final rate, not the zone of reasonableness. Review of a rate so established is identical to that applied to any rate-setting determination.

In reviewing PSC rate cases, this court has a very limited power of review.

> [F]indings and determinations of the commission [cannot] . . . be set aside or vacated upon the ground that the commission has committed errors of law or made erroneous findings of fact unless and until it appears from the record that such errors of law and findings resulted in the establishment of an unlawful or unreasonable rate. If the rate established falls within the zone of . . . reasonableness, it must stand even though in the opinion . . . of this court the commission erred and a more reasonable rate might have been found.

*Wisconsin Tele. Co. v. PSC,* 232 Wis. 274, 329, 287 N.W. 122, 149 (1939). PSC has wide discretion in determining factors upon which to set a rate schedule. *Madison Gas & Elec. v. PSC,* 109 Wis. 2d 127, 135, 325 N.W.2d 339, 343 (1982). Thus, if we conclude that the rate PSC set is reasonable, we are obliged to uphold it, regardless of any

error of law or fact. *Wisconsin Tele. Co.,* 232 Wis. at 329, 329 N.W. at 149.

Here, PSC concluded that, based upon its finding of imprudence, WPS's permitted rate of return on equity would be reduced from 13% to 12.9% for the remainder of 1987. PSC first took notice of its staff's analysis concluding that a reasonable rate of return would be between 12.75% and 13.25%. PSC found 13% to be a reasonable rate of return and then reduced that rate by .1% to 12.9% based on the finding of imprudence.

Imprudence is but one factor PSC considers in setting rates. If the rate of return is reasonable, we are bound to affirm its decision. The effect or "remedy" for imprudence is a value choice that we accord great deference. Because PSC set a reasonable rate, its treatment of WPS's imprudence will not be upset on appeal. We also need not address whether CUB's proposed relief would constitute prohibited retroactive rate-making because that remedy will not be imposed.

*By the Court.*—Judgment affirmed.